UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

Shuqueni Franklin,

                Defendant.

_____/

Case: 2:25−cr−20783
Assigned To : DeClercq, Susan K.
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/17/2025
Description: INFO USA V. FRANKLIN (AB)

Violations:
18 U.S.C. § 1343

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1.      In response to the novel coronavirus disease (COVID-19) pandemic, the federal government took several steps to provide urgently needed financial assistance to states.

2.      The Families First Coronavirus Response Act (FFCRA), which became law on March 18, 2020, provided flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic.

3.      The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020, and expanded the ability of the states to

1

provide unemployment insurance (UI) for many workers impacted by the COVID-19 pandemic, including workers who are not ordinarily eligible for unemployment benefits.

4.     The Federal Pandemic Unemployment Compensation (FPUC) program was created and allowed eligible individuals who were collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600 in federal benefits per week for weeks of unemployment ending on or before July 31, 2020.

5.     Additionally, the Pandemic Emergency Unemployment Compensation (PEUC) program was created and allowed those who exhausted benefits under regular unemployment compensation or other programs to receive up to thirteen weeks of additional federally funded benefits.

6.     To obtain any of the above-referenced benefits, an individual had to initiate a claim. The overwhelming majority of unemployment claims were filed online through state-organized websites. The amount of unemployment benefits an unemployment claimant would have been eligible for depended on a variety of factors, including the length of their previous employment and the wages they earned.

7.     Each state administers a separate UI program through its workforce agency ("SWA"), but all states follow the same guidelines established by federal law.

8.      SWAs had different ways of accepting claims/applications and certifications, and different manners of providing claimants with pandemic UI benefits.

9.      In the State of Michigan, the UI system was administered by the UIA, which is part of the SOM's Department of Labor and Economic Opportunity (DLEO).  Normally (in the absence of fraud), an unemployed worker initiates a UI claim.  This was be accomplished by submitting a claim in person, over the telephone, or via the Internet.

10.     Most UI claims were filed online through the UIA's website.  To be eligible for UI benefits, the worker had to demonstrate a certain level of earnings in several quarters immediately preceding the application.  The amount of unemployment benefits that a UI claimant might be eligible for depended on a variety of factors, including but not limited to the length of their employment and the amount of wages they earned.

11.     The origin of the payment to the SOM-UIA's bank account from the SOM-UIA's ASAP account originated from Michigan, where SOM-UIA is located.  Once the SOM-UIA made a request, the Treasury Web Applications Infrastructure (commonly referred to as the TWAI) routes the funds through one of two Operations Centers, either the Dallas Operations Center (DOC) located in Dallas, Texas, or the East Rutherford Operations Center (EROC) located in East Rutherford, New Jersey.

12.     The payment path always included routing through one of these two centers for processing.  If it is an ACH payment, the payment generally passed through the ACH Clearinghouse in Atlanta, Georgia.  Whether the SOM-UIA's bank account was located in the same state, or elsewhere, the funds would still have traveled in interstate commerce prior to arriving in the SOM-UIA's bank account.

13.     After an unemployment claim was accepted, the initial unemployment benefit was transferred into an account associated with a bank, a prepaid debit card, or a UI debit card.  Multiple states, including California and Michigan, provided UI benefits to a claimant using a debit card, issued by Bank of America (BOA), which was mailed to the claimant through the USPS. The unemployment benefits were loaded onto the debit card electronically, and additional benefits were loaded onto the card electronically every two weeks.

14.      After UI funds were processed, Bank of America debit cards were used to make cash withdrawals from automated teller machines (ATMs).

15.     Defendant Shuqueni Franklin (Franklin) fraudulently filed UI claims with the State of California and the State of Michigan using the stolen identities of unsuspecting individuals. These fraudulent claims were electronically filed by her, or at her direction, from an internet protocol (IP) address registered and located in the Eastern District of Michigan.

4

16.     Bank of America servers located in the States of Texas, New Jersey, and Georgia were used to disburse the UI funds issued through the fraudulent UI claims Franklin filed with the States of Michigan and California, which resulted in interstate wire transmissions from the State of Michigan to the States of Texas, New Jersey, and Georgia and initiated the fraudulent payment of California and Michigan UI benefits.

## COUNT 1
### 18 U.S.C. § 1343 - Wire Fraud

The general allegations are included in this count.

17.     In or about at least May 2020, through November 2020, in the Eastern District of Michigan and elsewhere, defendant Franklin knowingly devised and intended to devise a scheme and artifice to defraud state unemployment insurance agencies and to obtain money and property, namely state and federal unemployment insurance ("UI") benefit money, by means of false and fraudulent material pretenses and representations ("the scheme"). To execute and to attempt to execute the scheme, Franklin transmitted and caused to be transmitted in interstate commerce, by means of a wire communication, certain writings, signs, and signals in violation of 18 U.S.C. § 1343.

5

## **The Scheme**

16.     The purpose of defendant Franklin's scheme was to cause the States of California and Michigan to issue UI benefits based on false applications she filed or caused to be filed.

17.     It was part of the scheme that false and fraudulent UI benefit claims were submitted through the internet from the Eastern District of Michigan to California and Michigan by Franklin.

18.     It was part of the scheme that Franklin filed or caused the filing of false and fraudulent UI claims using the names and social security numbers of individuals without their consent, knowledge, or permission.

19.     Among the false statements Franklin made or caused to be made in the fraudulent UI benefit applications were that the purported claimants worked in California or Michigan and were unemployed because of COVID-19.

20.     It was further part of the scheme that fraudulently obtained State of California and Michigan federal UI benefits money was electronically deposited onto UI debit cards that were mailed to addresses associated with Franklin and others associated with her.

21.     It was further part of the scheme that Franklin gave the fraudulently obtained California and Michigan UI benefits cards to others so they could withdraw funds at automated teller machines ("ATMs") in the Eastern District of Michigan, which transmitted and caused the transmission of wire communications

in interstate commerce. These communications included writings, signs, signals, pictures, and sounds for the purpose of executing the scheme.

22.     On or about November 8, 2020, in the Eastern District of Michigan and elsewhere, defendant Franklin, for the purpose of executing the scheme described above, transmitted, and caused to be transmitted by means of wire communications in interstate commerce, $1,000 in currency withdrawn from an ATM machine in the Eastern District of Michigan.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

23.     The General Allegations and paragraphs 16 through 22 of this Information are included here to allege forfeiture under Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

24.     Upon being convicted of the offense in violation of Title 18, United States Code, Section 1343, Franklin shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, any property, which constitutes, or is derived from, proceeds obtained directly or indirectly because of such violation.

25.     The forfeiture in this case may include entry of a forfeiture money judgment in an amount up to the value of the property subject to forfeiture for the violations of conviction.

26.     If, by any act of omission of the defendant, the proceeds of the offenses: cannot be located upon the exercise of due diligence, have been transferred, sold to, or deposited with a third party, have been placed beyond the jurisdiction of the court, have been substantially diminished in value, or have been commingled with other property which cannot be divided without difficulty, the United States of America shall seek to forfeit substitute property under Title 21, United States Code, Section 853(p).

JEROME F. GORGON JR.
United States Attorney


*s/Andrew Yahkind for*
John K. Neal
Chief, Anti-Corruption Unit
Assistant United States Attorney


*s/Karen L. Reynolds*
Karen L. Reynolds
Assistant United States Attorney


Date: October 17, 2025

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number 2:25-cr-20783 |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| Companion Case Information | Companion Case Number: 25-cr-20779 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned:  Brandy R. McMillion |
| ☐ Yes    ☒ No | AUSA's Initials:   KLR |

**Case Title:** USA v.  Shuqueni Franklin

**County where offense occurred :** Wayne

**Check One:**    ☒ **Felony**        ☐ **Misdemeanor**        ☐ **Petty**

____Indictment/_✓_Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:**              ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____        **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 17, 2025
Date

s/Karen L. Reynolds

Karen L. Reynolds
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226- 9672
Fax:   (313) 226-2873
E-Mail address: karen.reynolds@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.